1

The Honorable Benjamin H. Settle

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   AMIE JOHNSON, CHRISTOPHER D.          )
     JOHNSTON, MAL BERMAN and TESS         )   No. 3:09-CV-05217-BHS
11   BERGMAN, on behalf of themselves and all )
     others similarly situated,,           )   PROPOSED CLASS ACTION
12                                          )
                    Plaintiffs,            )   COUNTRYWIDE HOME LOANS,
13                                          )   INC.'S MOTION TO DISMISS
        v.                                  )
14                                          )   ***Note on Motion Calendar***:
     COUNTRYWIDE HOME LOANS, INC.,          )   July 10, 2009
15                                          )
                    Defendant.             )   ***ORAL ARGUMENT***
16                                          )   ***REQUESTED***

17                   **I.    INTRODUCTION**

18        Countrywide Home Loans, Inc. ("Countrywide"), moves for an Order dismissing the

19   claims of plaintiffs Amie Johnson ("Johnson"), Christopher Johnston ("Johnston"), and Mal

20   and Tess Bergman (the "Bergmans") (collectively, "Plaintiffs") pursuant to Federal Rule of

21   Civil Procedure 12(b)(6).  In this putative class action, Plaintiffs challenge fees that they

22   allege Countrywide charged in connection with the origination of their residential mortgage

23   loans.  Class Action Complaint for Damages/Injunctive Relief ("Complaint") ¶¶ 4.7, 4.11,

24   6.4-6.5.  Countrywide contends that applicable law permitted the fees it charged.  This Court

25   need not reach that issue, however, because the statutes and regulations under which Plaintiffs

26   have sued Countrywide do not apply to their loans as a matter of law.

27

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1      The Complaint asserts claims under both the Washington Consumer Loan Act and the

2  Washington Consumer Protection Act.  The federal Depository Institutions Deregulation and

3  Monetary Control Act of 1980 ("DIDMCA") preempts plaintiffs' claims under the Consumer

4  Loan Act.  In DIDMCA, Congress expressly preempted state laws that limit or prohibit fees

5  charged by lenders in connection with federally related mortgage loans secured by first liens

6  on real property.  Because Plaintiffs' loans satisfy these criteria, DIDMCA preempts any state

7  law, such as the Consumer Loan Act, that purports to regulate their mortgage loan fees.  The

8  Washington Department of Financial Institutions ("DFI"), which administers the Consumer

9  Loan Act, has acknowledged DIDMCA's preemptive effect.

10      Plaintiffs also invoke regulations promulgated by the DFI under the Consumer Loan

11  Act.  Consistent with DIDMCA's preemption of state regulation of first-lien loan fees, these

12  regulations by their terms apply *only* to loans secured by junior liens.  Plaintiffs have not

13  alleged that junior liens secured their mortgage loans, and the allegations of the Complaint

14  and Plaintiffs' own loan documents show that they had first mortgage loans.  Accordingly, the

15  regulations that Plaintiffs allege Countrywide violated do not apply to their loans, and the

16  Complaint therefore does not state a claim for violation of these regulations.

17      Finally, Plaintiffs cannot salvage their claim by alleging that the same conduct, subject

18  to exclusive federal regulation, gives rise to a claim under Washington's Consumer Protection

19  Act ("CPA").  Plaintiffs have made no allegations of any "unfair and deceptive practice"

20  independent of the alleged violations of the Consumer Loan Act.  Because Plaintiffs cannot

21  state a claim under the Consumer Loan Act, they cannot pursue the same cause of action

22  under the guise of a CPA claim.  Moreover, even if Plaintiffs had alleged CPA claims

23  independent of their Consumer Loan Act claim, DIDMCA preempts application of the CPA

24  to the fees at issue just as surely as it preempts the Consumer Loan Act's regulation.

25

26

27

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## II.    FACTUAL BACKGROUND

Plaintiffs' claims arise from two mortgage loans they obtained from Countrywide.[1] The first loan was obtained by Johnson and Johnston (Complaint ¶¶ 4.2-4.7) and the second loan was obtained by the Bergmans (Complaint ¶¶ 4.8-4.12).

### A.    Johnson and Johnston's Loan

On January 20, 2007, Johnson and Johnston entered into a real estate purchase agreement to acquire real property located in Spanaway. Complaint ¶ 4.3. Johnson and Johnston describe this property as their "new home," *id.*, and state that they have resided at that property at all times relevant to the Complaint. *Id.* ¶ 3.1. "To fund the purchase of their new home," Johnson and Johnston applied for a residential loan from Countrywide on June, 19, 2007. *Id.* ¶ 4.4. The mortgage loan closed on July 25, 2007, when Johnson and Johnston executed a promissory note in favor of Countrywide in the amount of $271,667, secured by a deed of trust on the Spanaway property. *Id.* ¶ 4.5. The Complaint does not allege that a junior lien secured Johnson and Johnston's Countrywide loan or that any other, prior liens encumbered the property.

Johnson and Johnston challenge a "Loan Discount Fee" of 1.5% of the loan principal and a "Lender Fee" of $775. *Id.* ¶ 4.7(a), (b). They assert that Washington law prohibited Countrywide from collecting these fees because the "Discount Fee" allegedly did not lower their interest rate and the "Lender Fee" was not paid to an "unrelated third party." *Id.* ¶ 4.7.

### B.    The Bergmans' Loan

In "Spring 2006," the Bergmans applied for a residential mortgage loan from Countrywide. Complaint ¶ 4.8. The Bergmans intended to use the loan's proceeds to refinance an existing construction loan "for a home being built for the Bergmans." *Id.* On May 30, 2006, the Bergmans executed a note in favor of Countrywide in the amount of $389,410.22. *Id.* ¶ 4.9. To secure the note, the Bergmans also granted a deed of trust in favor

---

[1]    For the purposes of this Motion only, Countrywide cites to the factual allegations of the Complaint for the purposes of establishing whether Plaintiffs have stated a claim for which relief can be granted. Countrywide reserves its rights to dispute the accuracy of any of Plaintiffs' factual allegations.

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 3

1  of Countrywide as to certain real property located in Graham. *Id.* ¶¶ 3.2, 4.9. The Complaint

2  does not state that a junior lien secured the Bergmans' Countrywide loan or that any other,

3  prior liens encumbered the property.

4        The Bergmans challenge a "Processing Fee" of $310, an "Underwriting Fee" of $215,

5  a "Construction Admin Fee" of $600, and a "Jumbo Fee" of $19,688.95. *Id.* at ¶ 4.11(a)-(d).

6  The Bergmans assert that Washington law prohibited Countrywide from collecting those fees

7  because none of the fees allegedly were paid to an "unrelated third party." *Id.* at ¶ 4.11.

8                          **III.    ARGUMENT**

9        A court must dismiss a complaint where it fails to state a claim upon which relief can

10 be granted. Fed. R. Civ. P. 12(b)(6). A defendant meets this standard where a plaintiff's

11 complaint fails to provide grounds for his or her entitlement to relief. *Bell Atl. Corp. v.*

12 *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint containing "labels and

13 conclusions" and/or a "formulaic recitation of the elements of a cause of action" will not

14 survive a motion to dismiss. *Id.* (citations omitted). Rather, the "[f]actual allegations must be

15 enough to raise a right to relief above the speculative level. . . ." *Id.* (citations omitted). The

16 plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.*

17 at 555 n.3. In short, a plaintiff must allege "enough facts to state a claim for relief that is

18 plausible on its face." *Id.* at 570.

19       The Supreme Court recently reiterated this standard, holding that the federal rules

20 "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

21 *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct 1937, 1949 (2009).[2] To state a claim that is

22 sufficiently plausible to survive a Rule 12(b)(6) motion, a complaint must contain "factual

23 content that allows the court to draw the reasonable inference that the defendant is liable for

24 the misconduct alleged." *Id.* This requires "more than a sheer possibility that a defendant has

25

26  _____

27       [2]    The Court also corrected the misconception that the ruling in *Twombly* applied only to antitrust cases. "Our decision in *Twombly* expounded the pleading standard for all civil actions." *Ashcroft*, 129 S.Ct at 1953.

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

acted unlawfully." *Id.* Application of these standards to Plaintiffs' claims requires that the Court dismiss the Complaint in its entirety as a matter of law.

> **A.**    **The Court Should Dismiss Plaintiffs' Claim under RCW 31.04 Because Neither the Consumer Loan Act nor the Regulations Cited by Plaintiffs Apply to Their Loans.**

Plaintiffs claim that Countrywide improperly charged certain loan fees at the closing of their loans in violation of the Consumer Loan Act,[3] RCW 31.04, and certain regulations promulgated pursuant thereto. *See* Complaint ¶¶ 4.7, 4.11. Those allegations fail to state a plausible claim against Countrywide because the Consumer Loan Act does not regulate the fees that form the basis of Plaintiffs' claims, for two reasons. *First*, federal law preempts any provisions of the Consumer Loan Act and its accompanying regulations that purport to regulate Countrywide's assessment of mortgage loan fees. *Second*, although both Plaintiffs obtained first-lien mortgages with Countrywide, the regulations cited by Plaintiffs to challenge alleged "administrative fees"[4] apply *only* to junior lien loans.

> **1.**    **Federal Law Preempts Plaintiffs' Consumer Loan Act Claims.**

DIDMCA preempts any claims that Countrywide improperly charged Plaintiffs fees in violation of the Consumer Loan Act. Congress passed DIDMCA in 1980 to address then-rapidly increasing interest rates in the credit markets. *See Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818, 826 (1st Cir. 1992). At the time, state usury laws limited the interest rates and fees that state-chartered banks could charge. *Id.* In the late 1970s, the tension between state-imposed caps on interest rates and fees and the prevailing high interest rates in the market at large made it impossible for many state-chartered banks to make loans, because the state-imposed caps often were lower than prevailing interest rates. *Id.* To remedy this problem, "Congress enacted DIDMCA to promote the stability and viability of financial institutions by allowing them to charge market interest on mortgage

---

[3]    Plaintiffs incorrectly refer to this statute as the "Consumer Credit Act" in their Complaint. *See* Complaint ¶¶ 4.7, 4.11. Countrywide will refer to the statute by its proper title in this Motion.

[4]    These fees include the "Lender Fee" charged to Johnson and Johnston and the "Processing Fee," "Underwriting Fee" and "Construction Admin Fee" charged to the Bergmans.

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1  loans, and to promote home ownership by increasing the flow of available mortgage money."

2  *Brown v. Investors Mortgage Co.*, 121 F.3d 472, 475 (9th Cir. 1997).

3  Although DIDMCA provided for broad preemption of state usury laws to respond to

4  the credit crisis, Congress allowed states to roll back DIDMCA preemption if they passed a

5  law "which states explicitly and by its terms that such State does not want the provisions of

6  subsection (a)(1) of this section to apply with respect to loans, mortgages, credit sales, and

7  advances made in such State." 12 U.S.C. § 1735f-7a(b)(2). Washington has not enacted such

8  a law. As a result, DIDMCA preemption applies to Washington loans. *See Brown*, 121 F.3d

9  at 475-76 (Washington Legislature did not enact statute superseding DIDMCA preemption).

10  DIDMCA expressly preempts state regulation of mortgage fees and charges with

11  respect to loans or mortgages that meet three specific criteria. First, the loan must be secured

12  by a first lien on residential real property. 12 U.S.C. § 1735f-7a(a)(1)(A). Second, the loan

13  must be made after March 31, 1980. 12 U.S.C. § 1735f-7a(a)(1)(B). Finally, the loan must

14  be a "federally related mortgage loan," as defined by the National Housing Act ("NHA"). 12

15  U.S.C. § 1735f-7a(a)(1)(C). Section 527(b) of the NHA defines a "federally related mortgage

16  loan" as a loan secured by real property and made by a creditor that makes over $1,000,000

17  worth of residential real estate loans per year.[5] 12 U.S.C. § 1735f-5(b)(2)(D). Plaintiffs'

18  loans easily satisfy these criteria.

19  *First*, the allegations regarding the details of Plaintiffs' loans plainly show that first

20  liens on Plaintiffs' residential properties secured the loans. *See* Complaint ¶ 4.4 (alleging that

21  Johnson and Johnston obtained their loan to finance the acquisition of the home), ¶ 4.8

22  (alleging that Bergmans obtained their loan to refinance construction loan on their home).

23  Nothing in the Complaint even hints or suggests that other liens took priority over the liens of

24  the Countrywide loans.[6] Thus, the first element of DIDMCA is satisfied.

---

25  [5] In addition, loans that are insured or regulated by the federal government, made by the Department of
26  Housing and Urban Development, or eligible for purchase by the Federal National Mortgage Association,
Government National Mortgage Association, or Federal Home Loan Mortgage Association also meet the
27  definition of a "federally related mortgage loan" under the NHA. 12 U.S.C. § 1735f-5(b)(2)(A)-(C).

[6] Plaintiffs cannot challenge the first-lien status of the Countrywide loans consistent with the

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 6

**Second**, both loans also were made after March 31, 1980. Complaint ¶ 4.5 (alleging that Johnson and Johnston executed note and deed of trust on July 25, 2007), ¶ 4.9 (alleging that Bergmans executed note and deed of trust on March 20, 2006).

**Finally**, Countrywide makes loans secured by real property in the amount of more than $1,000,000 each year. Plaintiffs' loans were both secured by real property, and the amounts of Plaintiffs' two loans alone totaled over $660,000. *See* Complaint ¶ 4.5 (stating that Johnson and Johnston received a $271,667 loan from Countrywide), ¶ 4.9 (stating that the Bergmans received a $389,410.22 loan from Countrywide). Given that Plaintiffs allege that their putative class totals in the "thousands" in Washington alone (Complaint ¶ 5.3), and that the amount of fees at issue in this case allegedly exceeds $5,000,000 (Complaint ¶ 2.1), the allegations of the Complaint demonstrate that Countrywide makes more than $1,000,000 in residential mortgage loans nationwide over the course of a year.

Because they satisfy the definition of "federally related mortgage loans," Plaintiffs' loans fall within DIDMCA. The statute by its terms preempts all laws limiting the "amount of interest, **discount points**, finance charges, or **other charges** which may be charged, taken, received, or reserved." 12 U.S.C. § 1735f-7a(a)(1) (emphasis added). Here, Plaintiffs rest their Consumer Loan Act claim on the prohibition on charging discount points that do not reduce an interest rate (RCW 31.04.027(2) and WAC 208-600-500(3)(e)[7]); an alleged prohibition on charging a "jumbo fee" (WAC 208-620-560(6)[8]); and the prohibition on

requirements of Federal Rule of Civil Procedure 11. Should Plaintiffs nevertheless elect to do so, Countrywide will provide the Court with the relevant loan documentation establishing the lien priority and ask the Court to award it the fees and costs incurred in establishing a fact that should not be legitimately in dispute.

[7]    The DFI promulgated this regulation pursuant to the Mortgage Brokers Practices Act ("MBPA"), **not** the Consumer Loan Act. Nevertheless, to the extent the regulation purports to limit the ability of lenders to charge and collect fees, DIDMCA would preempt its application to federally-related loans. Moreover, the Mortgage Broker Practices Act does not apply to "commercial banks, bank holding companies, savings banks . . . and affiliates, subsidiaries, and service corporations thereof." RCW 19.146.020(1)(a)(i). Even if Plaintiffs' claims could survive DIDMCA preemption, Countrywide would be able to show that it was exempt from the MBPA due to its affiliation with a national bank, a bank holding company, and (after 2007) a federal savings bank. In any event, Plaintiffs do not purport to assert a claim under that statute.

[8]    According to their Complaint, Plaintiffs' challenge the "jumbo fee" on their loan, but the cited WAC provision relates to discount fees. For this further reason, Plaintiffs do not state a plausible claim that a "jumbo fee" violates the regulations. To the extent that Plaintiffs contend that the "jumbo fee" was the equivalent of a "discount fee" – a contention that the Complaint does not articulate – DIDMCA's express prohibition of state

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

charging various "administrative fees" (WAC 208-620-560(7)).  But DIDMCA expressly

states that federal law preempts state law limitations on the collection of "discount points,"

barring the claims under RCW 31.04.027(2) and WAC 208-600-500(3)(e).  Plaintiffs'

challenges to the "jumbo fee" and "administrative fees," on the other hand, fall under the

umbrella of DIDMCA's preemption of any state regulation of "other charges."  By its terms,

therefore, DIDMCA bars any state law limitation on Countrywide's ability to charge or

collect such fees.

The DFI has issued interpretive letters consistent with Countrywide's reading of

DIDMCA's preemptive effect.  The DFI has stated that it "recognizes the preemptive effect of

section 501 of [DIDMCA], 12 U.S.C., section 1735f-7 on certain restrictions on interest rates,

fees, and other charges in state law for first mortgage loans."   Rummage Decl., Ex. A (DFI

Interpretive Order 03-01-CL).  *See also* Rummage Decl., Ex. B (DFI Interpretive Letter,

March 11, 2002) (stating that state law "restrictions on the loan origination fee would be

preempted" for loans that satisfy DIDMCA requirements).  Thus, as the DFI has recognized,

DIDMCA preempts all of Plaintiffs' claims alleging that Countrywide charged fees in

violation of the Consumer Loan Act.

Plaintiffs make two other general claims under the Consumer Loan Act:  that

Countrywide obtained the fees through "fraud and misrepresentation" and that charging the

fees was "unfair and deceptive."  Complaint ¶¶ 6.6-6.7.  Plaintiffs' broad allegations that

Countrywide committed "fraud and misrepresentation," as well as "unfair and deceptive" acts,

do not state a claim.  *See Ashcroft*, 129 S.Ct. at 1949-50.  As the Supreme Court has made

clear, conclusory allegations are not entitled to an assumption of truth.  *Id.* at 1950.  "While

legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations."  *Id.*  Here, however, Plaintiffs' claims rest solely on the allegedly

improper nature of the fees described above.  Because DIDMCA preempts the Consumer

---

regulation of discount points would preempt Plaintiffs' challenge.  Otherwise, their challenge is preempted by
DIDMCA as a challenge to an "other charge," as discussed above.

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 8

Loan Act's provisions limiting the collection of mortgage loan fees, and because these same Consumer Loan Act provisions form the sole basis for the alleged "misconduct," Plaintiffs' general claims have no more merit than their specific alleged statutory violations. Thus, the Court should dismiss Count I in its entirety with prejudice.

> **2.    WAC 208-660-500 Does Not Apply to Plaintiffs' Loans Because the Loans at Issue Are Not Junior Liens.**

Plaintiffs' challenges to "jumbo fees" and "administrative fees" under the Consumer Loan Act also fail to state a claim for the independent reason that the regulations upon which Plaintiffs rely do not apply to their loans.

Plaintiffs repeatedly allege that, for all fees other than the "Discount Fee" charged to Johnson and Johnston, Countrywide's actions violated WAC 208-620-560 ("Section 560"). But Section 560 is entitled:  "What restrictions are there for charging fees on *junior lien loans* other than the loan origination fee when acting as a lender or correspondent lender?"  WAC 208-620-560 (emphasis added).  This plain language establishes that the regulation applies *only* to junior lien loans.  And that limitation simply manifests the DFI's recognition that DIDMCA preempts the Consumer Loan Act as to first-lien loans.

Here, Plaintiffs make no plausible allegation suggesting that their loans might fall within Section 560's purview.  As discussed above, Plaintiffs failed to allege that their Countrywide mortgages were junior lien loans.  Indeed, the allegations regarding the circumstances under which Plaintiffs obtained those loans – acquisition of a new home and refinancing a construction loan – show that Plaintiffs' loans must have resulted in senior liens. *See* Complaint ¶¶ 4.4, 4.8.  In the absence of any plausible allegation that junior liens secured Countrywide's loans (which Plaintiffs could not make consistent with Rule 11), Plaintiffs cannot invoke Section 560 to show a violation of the Consumer Loan Act.  The Court should dismiss Plaintiffs' challenges to the "administrative fees" and the "jumbo fee" for the independent reason that the regulation on which they rely does not apply to Plaintiffs' loans.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**B.    The Court Should Dismiss Plaintiffs' Claims for Damages and Injunctive Relief under the CPA Because They Simply Restate Their Barred Consumer Loan Act Claim.**

The Court should likewise dismiss Counts II and III, which both arise under the CPA. In Count II, the Complaint claims that Countrywide, by means of the "misconduct alleged in the foregoing paragraphs of the Complaint," violated the CPA.  Complaint ¶ 6.11.  Count III, on the other hand, seeks an injunction pursuant to the CPA for the same alleged misconduct. Complaint ¶ 6.14.  The Court should dismiss both Counts because they depend completely on Plaintiffs' preempted Consumer Loan Act claim.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  To state a CPA claim, a plaintiff must plead each of the following five elements:  "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  A plaintiff may satisfy the first two elements of a CPA claim by alleging a "per se" unfair trade practice, which "exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated."  *Id.* at 786.  But where a plaintiff asserts a "per se" CPA claim, the plaintiff must state a claim for violation of the underlying statute that serves as the surrogate for proof of the first two elements of the CPA claim.  If the plaintiff cannot plead a violation of the underlying statute, then the CPA claim fails on its face.  *See Fidelity Mortgage Co. v. Seattle Times Co.*, 131 Wn. App. 462, 128 P.3d 621, 626 (2006) (dismissing CPA claims based on violations of the Truth-in-Lending Act where TILA claims previously dismissed); *Henery v. Robinson*, 67 Wn. App. 277, 834 P.2d 1091, 1098 (1992) (finding that plaintiff could not show *per se* violation of CPA as it could not show a violation of the underlying statute as a matter of law).

Here, Plaintiffs' CPA claim depends entirely on their contention that Countrywide violated the Consumer Loan Act.  Plaintiffs have made no claims of misconduct by

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Countrywide independent of the Complaint's allegations that Countrywide charged fees that the Consumer Loan Act did not allow. Indeed, the CPA claim specifically alleges that the "unfair and deceptive practices" at issue rest on the misconduct that was "previously alleged," Complaint ¶ 6.10, and the "previously alleged" misconduct focuses on how the various fees charged by Countrywide violated the Consumer Loan Act. *See id.* ¶ 4.7 (alleging that fees charged to Johnson and Johnston violated Consumer Loan Act); ¶ 4.11 (alleging that fees charged to Johnson and Johnston violated Consumer Loan Act). Plaintiffs do not allege any "unfair or deceptive practices" other than these fees, and they provide no allegations as to why the fees would be "unfair and deceptive" except for the misguided assertion that they violate the Consumer Loan Act. Complaint ¶ 6.7. Plaintiffs' CPA claims thus rise or fall on the success of the underlying Consumer Loan Act claim. Because, as discussed above, the Consumer Loan Act does not apply, this Court should dismiss Plaintiffs' CPA claims as well.

In any event, even if Plaintiffs sought to plead that Countrywide's fees violated the CPA independent of the alleged Consumer Loan Act violations, DIDMCA would preempt such a non-per se CPA claim as well. Because Plaintiffs' loans satisfy all of DIDMCA's criteria and Washington has chosen not to roll back DIDMCA preemption, the State cannot regulate fees on federally related loans, whether that regulation occurs in the form of the Consumer Loan Act, the CPA, another statute, or the common law. Thus, DIDMCA would preempt any attempt to use the CPA to limit Countrywide's ability to charge and collect certain fees from first lien mortgage borrowers, just as it preempts regulation of federally related loans under the Consumer Loan Act. Accordingly, the Court should dismiss Counts II and III of the Complaint with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IV.     CONCLUSION

For all the reasons stated above, this Court should dismiss all claims of Plaintiffs'

Complaint with prejudice.

Respectfully submitted this 15th day of June, 2009

DAVIS WRIGHT TREMAINE LLP
Attorneys for Countrywide Home Loans, Inc.
By its attorneys,

By   */s/ Stephen M. Rummage*
        Stephen M. Rummage
        WSBA No. 11168
        steverummage@dwt.com
        1201 Third Avenue, Suite 2200
        Seattle, WA 98101
        Tel: (206) 757-8136
        Fax: (206) 757-7136

OF COUNSEL:

Thomas M. Hefferon
thefferon@goodwinprocter.com
David L. Permut
dpermut@goodwinprocter.com
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
Tel.:  (202) 346-4000
Fax:  (202) 346-4444

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) –  12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on June 15, 2009, I electronically filed the foregoing with the

3    Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4    counsel of record who receive CM/ECF notification, and that the remaining parties shall be

5    served in accordance with the Federal Rules of Civil Procedure.

6

7    DATED this 15th day of June, 2009.

8    Davis Wright Tremaine LLP
     Attorneys for Defendant

9    By   *s/ Stephen M. Rummage*

10        Stephen M. Rummage, WSBA #11168
          Davis Wright Tremaine LLP

11        1201 Third Avenue, Suite 2200
          Seattle, WA  98101-3045

12        Telephone:  (206) 622-3150
          Fax:  (206) 757-7700

13        E-mail:  steverummage@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COUNTRYWIDE'S MOTION TO DISMISS
(No. 3:09-CV-05217 BHS) – 13