UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMIE JOHNSON, CHRISTOPHER D. JOHNSTON, MAL BERGMAN and TESS BERGMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC.,<br><br>Defendant. | CASE NO. C09-5217BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant's Motion to Dismiss (Dkt. 23). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On April 16, 2009, Plaintiffs Amie Johnson, Christopher D. Johnston, Mal Bergman and Tess Bergman filed a Class Action Complaint for Damages/Injunctive Relief alleging that Defendant Countrywide Home Loans, Inc., violated RCW 34.04, *et seq.*, and the Washington Consumer Protection Act. Dkt. 1 ("Complaint").

ORDER - 1

On June 15, 2009, Defendant filed a Motion to Dismiss. Dkt. 23. On July 22, 2009, Plaintiffs responded. Dkt. 28. On August 31, 2009, Defendant replied. Dkt. 32. On August 7, 2009, Plaintiffs filed a surreply. Dkt. 33. On August 10, 2009, Defendant filed a surreply. Dkt. 34.[1]

## II.  FACTUAL BACKGROUND

Plaintiffs' claims arise from two mortgage loans that they obtained from Defendant. The first loan was obtained by Plaintiffs Ms. Johnson and Mr. Johnston (Complaint ¶¶ 4.2-4.7) and the second loan was obtained by Plaintiffs Mr. and Mrs. Bergman (Complaint ¶¶ 4.8-4.12).

**A.    Ms. Johnson and Mr. Johnston's Loan**

On January 20, 2007, Ms. Johnson and Mr. Johnston entered into a real estate purchase agreement to acquire real property located in Spanaway, Washington. Complaint ¶ 4.3. They described this property as their "new home," *id.*, and stated that they have resided at that property at all times relevant to the Complaint. *Id.* ¶ 3.1. On June 19, 2007, they applied for a residential loan from Defendant. *Id.* ¶ 4.4. On July 25, 2007, the mortgage loan closed after Ms. Johnson and Mr. Johnston executed a promissory note in favor of Defendant in the amount of $271,667, secured by a deed of trust on the Spanaway property. *Id.* ¶ 4.5. Defendant notes that the "Complaint does not allege that a junior lien secured Johnson and Johnston's Defendant loan or that any other, prior liens encumbered the property." Dkt. 28 at 3.

In this action, Ms. Johnson and Mr. Johnston challenge a "Loan Discount Fee" of 1.5% of the loan principal and a "Lender Fee" of $775. *Id.* ¶ 4.7(a), (b). They assert that Washington law prohibited Defendant from collecting these fees because the "Discount

---

[1] Although these surreplies violate the Local Rules governing briefing, the Court considered the content contained therein. In Defendant's surreply, it asked for an opportunity to fully respond to the substance of Plaintiffs' surreply. Because the Court is granting the majority of Defendant's requested relief, the Court finds that another brief on these issues would be unnecessary.

ORDER - 2

Fee" allegedly did not lower their interest rate and the "Lender Fee" was not paid to an "unrelated third party." *Id.* ¶ 4.7.

**B.    The Bergmans' Loan**

In the spring of 2006, the Bergmans applied for a residential mortgage loan from Defendant. Complaint ¶ 4.8. The Bergmans intended to use the loan's proceeds to refinance an existing construction loan "for a home being built for the Bergmans." *Id.* On May 30, 2006, the Bergmans executed a note in favor of Defendant in the amount of $389,410.22. *Id.* ¶ 4.9. To secure the note, the Bergmans also granted a deed of trust in favor of Defendant as to certain real property located in Graham, Washington. *Id.* ¶¶ 3.2, 4.9. Defendant notes that the "Complaint does not state that a junior lien secured the Bergmans' loan or that any other, prior liens encumbered the property." Dkt. 28 at 4.

The Bergmans challenge a "Processing Fee" of $310, an "Underwriting Fee" of $215, a "Construction Admin Fee" of $600, and a "Jumbo Fee" of $19,688.95. *Id.* ¶ 4.11(a)-(d). The Bergmans assert that Washington law prohibited Defendant from collecting those fees because none of the fees were paid to an "unrelated third party." *Id.* ¶ 4.11.

## III. DISCUSSION

**A.    Standard**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**B.     Defendant's Motion**

Defendant argues that the Court should dismiss Plaintiffs' complaint "because the statutes and regulations under which Plaintiffs have sued [Defendant] do not apply to their loans as a matter of law." Dkt. 23 at 1.

**1.     Preemption**

Interpretation of a federal statute preempting state law begins with the text and is guided by two presumptions: such statutes are to be interpreted narrowly in light of federalism concerns; and the purpose of Congress is "the ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-86 (1996).

The federal Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA") exempts certain mortgages and loans from state laws that expressly limit "the rate or amount of interest, discount points, finance charges, or other charges." 12 U.S.C. § 1735f-7a(a)(1); *Brown v. Investors Mort. Co.*, 121 F.3d 472, 475 (9th Cir. 1997). DIDMCA applies to mortgages and loans that are (1) "secured by a first lien on residential real property," (2) made after March 31, 1980, and (3) "federally related." 12 U.S.C. § 1735f-7a(a)(1). Congress, however, allowed states to roll back DIDMCA preemption if they passed a law "which states explicitly and by its terms that such State does not want the provisions of subsection (a)(1) of this section to apply with respect to loans, mortgages, credit sales, and advances made in such State." 12 U.S.C. § 1735f-7a(b)(2). Moreover, Congress included a more generic exception to federal preemption, which provides as follows: "At any time after March 31, 1980, any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection (a)(1) of this section." 12 U.S.C. § 1735f-7a(b)(4).

4

Washington has not enacted a law pursuant to 12 U.S.C. § 1735f-7a(b)(2). As a result, the Ninth Circuit has held that DIDMCA preemption applies to qualifying loans made in Washington. *See Brown*, 121 F.3d at 475-76 (Washington Legislature did not enact statute superseding DIDMCA preemption). With regard to the 12 U.S.C. § 1735f-7a(b)(4) exception, the Court is unaware of any authority on the issue of whether Washington has adopted a law that meets the requirements of this exception.

In this case, Defendant argues that DIDMCA preempts the Washington Administrative Codes ("WAC") that support Plaintiffs' claims. It is undisputed that both of the loans in question qualify for DIDMCA exemptions; *i.e.*, the loans are secured by first liens on real property, were made after March 31, 1980, and are federally related. Thus, the Court must determine whether DIDMCA preempts the WACs that support Plaintiffs' claims.

First, Plaintiffs claim that Defendant improperly charged a "Loan Discount" of 1.5% in violation of WAC 208-660-500(3)(e). Complaint, ¶ 4.7(a). The WAC prohibits "[c]harging *discount points* on a loan which does not result in a reduction of the interest rate." WAC 208-660-500(3)(e). DIDMCA expressly exempts these loans from state laws that limit discount points. 12 U.S.C. § 1735f-7a(a)(1). Plaintiffs, however, argue that WAC 208-660-500(3)(e) is a state law that places a limitation on discount points and therefore qualifies for the 12 U.S.C. § 1735f-7a(b)(4) exception. The Court agrees because federal preemption statutes are to be interpreted narrowly and Defendant has failed to show Congressional intent to the contrary. Therefore, Defendant's motion is denied on this issue.

Second, Plaintiffs claim that Defendant improperly charged fees in violation of WAC 208-660-560. Complaint, ¶¶ 4.7(b)("Lender fee"), 4.11(a)-(d)("Processing Fee," "Underwriting Fee," "Construction Admin Fee," and "Jumbo Fee"). Defendant argues that these fees fall within the "other charges" provision of 12 U.S.C. § 1735f-7a(a)(1). Dkt. 23 at 8. The Court is not persuaded that these specific fees fall into the general

category of "other fees." The Court must interpret DIDMCA narrowly and Defendant has failed to show that it was the purpose of Congress to regulate these types of fees. Therefore, Defendant's motion is denied on this issue.

### 2.  WAC § 208-620-560

Defendant argues that WAC 208-620-560 applies only to junior liens. Dkt. 23 at 9. Plaintiffs counter that the version of the code that was in effect during the origination of Plaintiffs loans, 2006 and 2007, did not limit the prohibited practices to junior liens. Dkt. 33 at 3-4. But, under Washington law, an amendatory act "constitutes a repeal of the amended act to the extent the two acts are inconsistent." *See Cazzanigi v. General Elec. Credit Corp.*, 132 Wn.2d 433, 442-443 (1997) (citing *Seattle-King County Council of Camp Fire v. State*, 105 Wn.2d 55, 63, 711 P.2d 300 (1985)). The current version of WAC 208-620-560 is limited to junior liens. *See* WAC 208-620-560 ("What restrictions are there for charging fees on junior lien loans other than the loan origination fee . . . ."). The Court finds that this version controls the disposition of this action. Therefore, the Court grants Defendant's motion on this issue because Plaintiffs have failed to show that the loans in question are governed by WAC 208-620-560.

### C.  Conclusion

The Court grants Defendant's motion on the majority of Plaintiffs' alleged violations that support their claims. The remaining violations are that (1) Defendant violated WAC 208-660-500(3)(e), Complaint, ¶ 4.7(a), and (2) broad allegations that Defendant engaged, directly or indirectly, in unfair or deceptive practices, Complaint, ¶¶ 4.7(f), 4.11(f). With regard to the former, Defendant briefly asserts that WAC 208-660-500(3)(e) does not apply because it is not regulated under the Mortgage Brokers Practices Act. Dkt. 23 at 7, n. 7. Defendant's corporate form is beyond the scope of the complaint and the Court will not address this issue in this motion to dismiss.

With regard to whether Defendant engaged in unfair or deceptive practices, Plaintiffs have failed to asserts sufficient facts to support these allegations. If a claim is

based on a proper legal theory but fails to allege sufficient facts, a plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). Therefore, the Court grants Plaintiffs thirty (30) days to amend their complaint. Failure to amend may result in dismissal.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 23) is **GRANTED in part** and **DENIED in part** as stated herein. Plaintiffs shall file an amended complaint consistent with this order no later than October 16, 2009.

DATED this 16th day of September, 2009.

BENJAMIN H. SETTLE
United States District Judge